UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Lonnie Washburn,<br><br>　　　　　Plaintiff<br><br>　v.<br><br>Mesquite Gaming, LLC,<br><br>　　　　　Defendant | Case No. 2:24-cv-00383-CDS-BNW<br><br>**Order Granting Defendants' Motion to Dismiss, Denying as Moot Plaintiff's Emergency Request for Prejudgment and Directing Parties to Mediation**<br><br>[ECF Nos. 19, 23] |

　　　　This action was transferred from the U.S. District Court for the District of Utah. ECF No. 17. Pro se plaintiff Lonnie Washburn brings this suit against defendant Mesquite Gaming, LLC based on actions that occurred while Washburn was a guest at one of Mesquite Gaming's hotels. Washburn alleges that Mesquite Gaming violated the Americans with Disabilities Act (ADA) and several Nevada laws by intentionally discriminating against, interfering with, and depriving Washburn of his rights granted by the ADA and Nevada Revised Statutes (NRS)[1] based on Washburn's disability and accompaniment of a service animal. First Am. Compl. (FAC), ECF No. 14.

　　　　Pending before the court is Mesquite Gaming's motion to dismiss (ECF No. 19) and Washburn's emergency request for prejudgment (ECF No. 23). Mesquite Gaming moves to dismiss this action based on lack of standing and failure to state a claim upon which relief may be granted. ECF No. 19. Washburn filed a "memorandum in opposition" to the motion to

---

[1] Washburn alleges Mesquite Gaming violated NRS § 651.070, NRS § 651.075, NRS § 644A.940, and NRS § 651.080. NRS § 651.070 prohibits discrimination based on disability (among other things) in places of public accommodation. NRS § 651.075 prohibits places of public accommodation from refusing admittance or service to a person with a disability because the person is accompanied by a service animal. NRS § 644A.940 makes it "unlawful for any animal to be on the premises of a licensed cosmetological establishment." NRS § 651.080 is a criminal statute, which outlines when a person is guilty of a misdemeanor.

dismiss. ECF No. 20. Because I find that Washburn lacks standing, I grant Mesquite Gaming's motion to dismiss and deny the pending emergency request for prejudgment writ as moot.

I.     Background[2]

Washburn is hearing impaired and suffers from moderate hearing loss in both ears. Washburn Decl., ECF No. 14-1 at ¶¶ 3–8. This impairment interferes with Washburn's ability to communicate and his safety. *Id.* at ¶¶ 6–7. Because of this impairment, Washburn owns a canine service animal who was trained to assist Washburn with his hearing disability. *Id.* at ¶¶ 8–9.

On June 20, 2023, Washburn checked in at the Virgin River Hotel and Casino, which is owned by defendant Mesquite Gaming. *Id.* at ¶¶ 10–12. Washburn was accompanied by his service animal. *Id.* at ¶ 14. When checking in, the hotel clerk asked Washburn if he was traveling with any pets or service animals. *Id.* at ¶ 13. Washburn answered in the affirmative. *Id.* at ¶ 14. Washburn was assigned a room in Building 3. *Id.* at ¶ 15. Washburn alleges that guests accompanied by service animals are "segregated" to Building 3 from other guests who are not accompanied by a service animal. Washburn Decl., ECF No. 14-2 at ¶¶ 17–18.

On June 21, 2021, Washburn attempted to extend his hotel stay. *Id.* at ¶ 19. He was required to check out and then check back into the hotel, and to pay another security deposit, although his first security deposit had not yet been refunded. *Id.* at ¶¶ 20–22. He was again asked if he was traveling with pets or a service animal, to which he replied by showing the hotel clerk his service animal credentials. *Id.* at ¶¶ 23–24. Washburn was reassigned to the same room. *Id.* at ¶ 25. The clerk told Washburn that all people traveling with pets or service animals are placed in Building 3. *Id.* at ¶ 26.

---

[2] Washburn's FAC is void of a background section, but he provides a declaration (split across three filings, filed as attachments to the FAC) containing background information. "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).

Later that day, Washburn was using a chaise lounge adjacent to the hotel's swimming pool. *Id.* at ¶ 27. He was accompanied by his service animal, who was quietly lying next to Washburn. *Id.* at ¶¶ 28–31. Washburn was then approached by a hotel maintenance worker who told Washburn that he needed to leave the area because dogs are not allowed in the pool. *Id.* at ¶ 30. Washburn told the employee that his "dog [was] not in the pool and [was] a service animal." *Id.* at ¶ 31. The employee then told Washburn that state law did not allow dogs in the pool, that he did not care if his dog was a service animal, and then called security, who also told Washburn that dogs were not allowed at the pool. *Id.* at ¶¶ 32–34. Washburn informed hotel management of this incident. *Id.* at ¶ 38. In response, Dick Tomasso, head of security for Mesquite Gaming, asked Washburn to submit his medical records and dog certification. ECF No. 14-3 at ¶ 40. Washburn replied that Tomasso was "not allowed to ask that," to which Tomasso replied "something to the effect of 'I guess you have this all figured out already then'." *Id.* at ¶¶ 41–42.

**II.   Legal standard**

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Id.* at 555.

Accordingly, Fed. R. Civ. P. 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When 'standing is challenged on the basis of the pleadings,' we must 'accept as true all material allegations of the complaint' and 'construe the complaint in favor of the complaining party.'" *Cal. Rest. Ass'n v. City of Berkeley*, 65 F.4th 1045, 1049 (9th Cir. 2023) (quoting *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988)). At this stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks and citation omitted).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Fed. R. Civ. P. 15(a), a court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178 (1962).

### III.   Discussion

#### A. Standing

This court's jurisdiction is limited to "Cases" and "Controversies." U.S. Const. art. III, § 2; *Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1153 (9th Cir. 2017). Federal courts are "courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotation marks and citation omitted). And "when a federal court concludes that it lacks subject-matter jurisdiction, [it] must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Subject matter jurisdiction exists

where either: (1) a federal question arises on the face of the complaint or (2) if there is diversity jurisdiction. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Washburn alleges both federal question and diversity jurisdiction. ECF No. 14-1 at 3.

### 1. *Diversity jurisdiction*

Diversity jurisdiction requires: (1) all plaintiffs be of different citizenship than all defendants, and (2) the amount in controversy to exceed $75,000. *See* 28 U.S.C. § 1332(a).

Here, there is diversity between the parties as Mesquite Gaming is incorporated in Nevada and Washburn is a citizen of Utah. ECF No. 14-1 at 3–4. However, it is less clear whether the amount in controversy exceeds $75,000. Generally, for the purpose of federal diversity jurisdiction, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *See, e.g.*, *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). "[I]f, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or . . . the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount . . . the suit will be dismissed." *Id.* Legal certainty is met "when a specific rule of law or measure of damages limits the amount of damages recoverable." 14A Wright, Miller, and Cooper, Federal Practice and Procedure, Jurisdiction, § 3702 at 48-50 (2d ed. 1985). Here, Count VI of the FAC alleges $300,000.00 in damages against Mesquite Gaming under the ADA[3] and NRS 651.075 for "knowingly and willfully" violating Washburn's civil rights when "Mr. Tomasso sent [Washburn] an email asking for the dog's certification, and the Plaintiff's medical records." *Id.* at 4. While I am skeptical that more than $75,000 is at stake in this case, Mesquite Gaming failed to address diversity jurisdiction and thus failed to show with a "legal certainty" that the amount in controversy cannot be met.

---

[3] The court notes that "[d]amages are not recoverable under Title III of the ADA—only injunctive relief is available for violations of Title III." *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002).

### 2. *Article III standing*

However, "[w]hen jurisdiction is premised on diversity of citizenship, a plaintiff must have standing under both Article III and state law in order to maintain a cause of action." *Morell v. Star Taxi*, 343 F. App'x 54, 57 (6th Cir. 2009); *see also FMC Corp. v. Boesky*, 852 F.2d 981, 992 n.23 (7th Cir. 1988) ("When jurisdiction is premised on diversity of citizenship, a plaintiff must have standing under both Article III and state law in order to maintain a cause of action."); *Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979) ("Any person who is being subjected to discrimination based on disability in violation of" Title III has a cause of action, but whether a plaintiff has a cause of action is a distinct issue from whether he has standing under Article III.). Thus, to bring a claim under Title III of the ADA, Washburn must establish Article III standing.

The requirements of Article III standing are: (1) injury in fact; (2) traceable to Defendant's conduct; and (3) redressable by a favorable court decision. *Lujan*, 504 U.S. at 564. Further, because only injunctive relief is available under Title III of the ADA, Washburn must not only demonstrate the familiar requirements for standing but also "a sufficient likelihood that he will be wronged again in a similar way." *See Ervine v. Desert View Reg'l Med. Ctr. Holdings*, LLC, 753 F.3d 862, 867 (9th Cir. 2014) (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)). "That is to say, he must show he faces a 'real and immediate threat of repeated injury.'" *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). "An ADA plaintiff establishes such a real and immediate threat if 'he intends to return to a noncompliant place of public accommodation where he will likely suffer repeated injury.'" *Id.* (quoting *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 948 (9th Cir. 2011)).

The "general rule" of Title III of the ADA is that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The Department of Justice (DOJ) has explained that hotels may not "assign designated

rooms for guests with service animals" or restrict them to "pet-friendly" rooms "out of consideration for other guests" because a "guest with a disability who uses a service animal must be provided the same opportunity to reserve <u>any</u> available room at the hotel as other guests without disabilities." *See* Dep't of Justice, Frequently Asked Questions about Service Animals and the ADA ("DOJ FAQ"), https://www.ada.gov/resources/service-animals-faqs/ (updated Feb. 28, 2020) (emphasis added). Further, "it is not necessary for standing purposes that the barrier completely preclude the plaintiff from entering or from using a facility in any way." *Chapman*, 631 F.3d at 947. "Rather, the barrier need only interfere with the plaintiff's 'full and equal enjoyment' of the facility." *Id.* (quoting 42 U.S.C. § 12182(a)).

The DOJ has also explained that "[t]he ADA requires State and local government agencies, businesses, and non-profit organizations (covered entities) that provide goods or services to the public to make 'reasonable modifications' in their policies, practices, or procedures when necessary to accommodate people with disabilities." DOJ FAQ. "Accordingly, entities that have a 'no pets' policy generally must modify the policy to allow service animals into their facilities." *Id*. While the ADA "does not override public health rules that prohibit dogs in swimming pools"—"service animals must be allowed on the pool deck and in other areas where the public is allowed to go." *Id*. Furthermore, "[i]ndividuals with disabilities shall be permitted to be accompanied by their service animals in all areas of a place of public accommodation where members of the public, . . . customers, [or] patrons . . . are allowed to go." 28 C.F.R. § 36.302(c)(7).

Here, Washburn adequately alleges that the hotel's policy of assigning all guests with service animals to Building 3, away from other guests who may have pet allergies, violates the ADA. *See generally* FAC, ECF No. 14. Further, Washburn adequately alleges that his canine service animal was trained to assist him in compensating for his hearing disability. Washburn Decl., ECF No. 14-1 at ¶¶ 8–9. This falls within the definition of a service animal under the ADA. *See* 28 C.F.R. § 36.104 ("*Service animal* means any dog that is individually trained to do work or

perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability…The work or tasks performed by a service animal must be directly related to the individual's disability."). Washburn further adequately alleges that he was denied from the pool deck area because he was accompanied by his service animal, which he needed because of his disability, in violation of the ADA. *See generally* FAC, ECF No. 14; *see, e.g., Coffman v. Taqueria Los Gallos*, 2015 WL 3935180, at *4 (D. Nev. June 26, 2015) (finding that plaintiff stated a Title III ADA claim sufficient to avoid dismissal by alleging, in part, that plaintiff needed his seeing-eye dog to aid him due to his obvious disability). Thus, Washburn adequately alleged that the conduct of assigning him to Building 3 and disallowing his service animal in the pool area constituted discrimination under the ADA, thereby establishing an injury-in-fact that is traceable to Mesquite Gaming's conduct which may be redressed by a favorable court decision.

However, Washburn does not allege that he intends to patronize the hotel in the future. Absent allegations of an intent of specific plans to visit the hotel in the future, Washburn has not alleged a threat of a future injury, and thus has not demonstrated standing. *See, e.g., Strojnik v. Pasadena Robles Acquisition, LLC*, 2019 U.S. Dist. LEXIS 213070, at *6–7 (C.D. Cal. Aug. 14, 2019), *aff'd*, 801 F. App'x 569, 570 (9th Cir. 2020) (affirming district court's dismissal of ADA claim for lack of standing because the plaintiff failed to demonstrate future intent to visit defendant's hotel); *see also Gastelum v. Canyon Hosp. LLC*, 2018 WL 2388047, at *7 (D. Ariz. May 25, 2018) (holding that plaintiff lacked standing to pursue injunctive relief under the ADA for failure to show a likelihood of future injury); *Rutherford v. JC Resorts, LLC*, 2020 WL 4227558, at *5 (S.D. Cal. July 23, 2020) (same).

Alternatively, a plaintiff who "has visited a public accommodation on a prior occasion" demonstrates a real and immediate threat if he "is currently deterred from visiting that accommodation by accessibility barriers." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 (9th Cir. 2008). Title III of the ADA "explicitly provides that it does not require 'a person with a disability

to engage in a *futile gesture* if such person has actual notice that a person or organization . . . does not intend to comply' with the ADA." *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1136 (9th Cir. 2002) (quoting 42 U.S.C. § 12188(a)(1)). Washburn has not alleged that his experience at the Virgin River Hotel and Casino has deterred him from returning. Thus, Washburn does not have standing to bring his claims under the ADA and as a result, Washburn's ADA claims are hereby dismissed, without prejudice and with leave to amend.

### B. Remaining Nevada law claims

Because this court does not have jurisdiction over Washburn's federal claim, I must determine whether I have diversity jurisdiction over Washburn's state law claims. In the usual case in which all federal-law claims are eliminated before trial, the balance of factors "will point toward declining to exercise jurisdiction over the remaining state-law claims." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997). "Once [the court] dismisses all federal claims before it, [it] must 'reassess its jurisdiction by engaging in a pragmatic and case-specific evaluation of the myriad of considerations that may bear on the determination of whether to exercise supplemental jurisdiction.'" *Pure Wafer Inc. v. City of Prescott*, 845 F.3d 943, 960 (9th Cir. 2017) (Smith, J., dissenting) (quoting 16 James WM. Moore et al., Moore's Federal Practice § 106.66[1] (3d ed. 2016)).

After thorough consideration of the applicable law and the principles of judicial economy, procedural convenience, fairness to the litigants, and comity, I decline to exercise supplemental jurisdiction over Washburn's state law claims. Therefore, Washburn's FAC is dismissed in its entirety without prejudice.

### C. Washburn has leave to file a second amended complaint

Rule 15(a)(2) of the Federal Rules of Civil Procedure directs that "[t]he court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). Although the Ninth Circuit's amendment policy is generous, particularly for pro se plaintiffs, courts need not give leave to amend where amendment would be futile because the claims fail to

9

state a colorable claim for relief. *See, e.g., AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

Here, I find that allowing Washburn to file a second amended complaint would not be futile as he may be able to cure the issues related to standing. However, if Washburn elects to file a second amended complaint, prior to Washburn filing said complaint, the parties must first participate in a settlement conference. For the sake of judicial efficiency, any pretrial motion filed before the parties have completed their good-faith participation in a settlement conference will be automatically denied without prejudice. If settlement is unsuccessful, Washburn must then file a second amended complaint within 30 days of the end of the settlement conference if he wishes to continue this action in federal court.

Washburn is cautioned that a second amended complaint must comply with the Local Rules of the District of Nevada and that an amended complaint must be complete in itself without reference to any prior pleading (i.e., the original complaint). *See, e.g., Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). Thus, the second amended complaint must contain all claims, defendants, and factual allegations that Washburn wishes to pursue in this action. Washburn must separate each cause of action and must include within each claim all the facts that support each element of each theory.

### III.   Conclusion

IT IS THEREFORE ORDERED that Mesquite Gaming's **motion to dismiss [ECF No. 19] is GRANTED**, and the complaint is **DISMISSED without prejudice with leave to amend**.

As I have determined that this court should not exercise supplemental jurisdiction over Washburn's surviving claims, it would be improper for me to adjudicate the remaining motion on the merits. Thus, IT IS FURTHER ORDERED that the emergency pending motion for prejudgment writ of attachment **[ECF No. 23] is DENIED without prejudice** as moot.

IT IS FURTHER ORDERED that this matter is referred to the magistrate judge for a settlement conference. LR 16-5. Should Washburn wish to file a second amended complaint, his second amended complaint must be filed within 30 days after completion of the settlement conference. Failure to file a second amended complaint within 30 days of the settlement conference will result in dismissal of this action without further notice.

Dated: June 10, 2024

_____
Cristina D. Silva
United States District Judge